UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MARCIA VINSON,

    Plaintiff,

v.

GRANT A. COBB,

    Defendant.

Case No. 1:06-CV-134

Chief Judge Curtis Collier

# **M E M O R A N D U M**

## I. INTRODUCTION

Before the Court is a motion filed by plaintiff Marcia Vinson ("Plaintiff") for summary judgment on the issue of liability in this matter (Court File No. 16). Defendant Grant A. Cobb ("Defendant") timely responded (Court File No. 18).[1] Plaintiff filed a reply brief (Court File No. 23). Plaintiff also filed a motion (Court File No. 21) to exclude portions of the testimony of Defendant's expert. Defendant failed to reply to such motion in a timely fashion. Nonetheless, all these motions are now ripe for review. Trial is scheduled for June 25, 2007 (Court File No. 8).

For the following reasons, the Court will **DENY** both of Plaintiff's motions (Court File Nos. 16 & 21).

## II. FACTS

---

[1] The parties agreed to extend the time for Defendant to respond and submitted a joint motion to the Court via email. The Court granted this motion although the Order was not filed until April 19, 2007 (Court File No. 25).

The following facts are not in dispute.[2] On July 3, 2005, Plaintiff was visiting friends in Chattanooga, and was a passenger on a 37-foot Harbor Master houseboat owned by her friend Greg Mercer ("Mercer's boat"). Mercer's boat, at the time of the accident at issue, was moored at approximately the 474-mile marker in the Tennessee River (Court File No. 1, ¶ I).

Defendant's vessel, a 36-foot Gibson houseboat ("Defendant's boat"), was tied to Mercer's boat just prior to the accident. Apparently it is not uncommon for houseboats to tie up to one another and for the passengers to socialize among the different boats, something akin to a floating backyard barbecue (Court File No. 17, p. 2). At the time of the accident Defendant had decided to untie his boat and return to a nearby marina (*id*.). Defendant was at the controls of his boat, on the flying bridge (*id*.; *see also* No. 18, p. 2). Deborah Deitz ("Deitz"), a passenger on Defendant's boat, untied the lashings which connected Defendant's boat to Mercer's boat, and Defendant's boat began to drift away from Mercer's boat (*id*.). Plaintiff was standing on the deck of Mercer's boat (*id*.).

There is no dispute Defendant's boat, after drifting away at idle speed a short distance from Mercer's boat, suddenly engaged in reverse gear and "backed into" Mercer's boat (*id*. at 3; *see also* No. 18, p. 2-3). The force and angle were such the collision broke a window on Mercer's boat (*id*.). The impact caused Defendant's boat to bounce off a bit, after which a second collision occurred (*id*.).

A factual dispute arises over whether Defendant's negligent operation of his boat caused the collisions, as alleged in Plaintiff's complaint (Court File No. 1; *see also* No. 17, p. 2-3),[3] or whether

---

[2] These facts are taken from the complaint (Court File No. 1), Plaintiff's motion for partial summary judgment and its attachments and supporting memorandum (Court File Nos. 16 & 17), and Defendant's response and its attachments (Court File No. 18).

[3] Plaintiff's complaint alleges "Defendant Cobb negligently, and unreasonably, operated his vessel so as to cause it to impact, and collide with great force and violence, the 37 foot Harbor

a mechanical failure led to the collision (Court File No. 18, p. 3). Plaintiff elicited deposition testimony from Deitz that Defendant's boat "was moving in a forward direction, under power" before it reversed and hit Mercer's boat (Court File No. 17, p. 3) (citing No. 16-3). For his part, Defendant argues his boat's transmission fell out of neutral into reverse without Defendant taking action, and this was a "spontaneous event that had never happened before" (Court File No. 18, p. 3). To support his argument Defendant submitted the expert opinion of David A. Timpani ("Timpani"), a marine surveyor (*id*. at 4).[4] Timpani tested Defendant's boat on August 9, 2005, approximately one month after the accident (*id*. at 6). Based on his inspection and testing of Defendant's boat and Defendant's account of the accident, Timpani concluded:

> within a reasonable degree of certainty . . . the transmission shift cables and the neutral safety switch were subject to normal wear and tear and had reached the point on July 3, 2005 where they were out of adjustment which allowed engine to start in the reverse gear even though the operator of the boat had not shifted the transmission shift lever to the reverse position. In addition, based upon the history provided by [Defendant], the condition which allowed the transmission to be in the reverse position without the operator manually shifting the transmission lever to the reverse position manifested itself at the time of the accident in this case on July 3, 2005.

---

Master vessel upon which Plaintiff was a passenger" (Court File No. 1, ¶ IV). The complaint alleges Defendant's negligence "proximately caused the collision, and the Plaintiff's resulting injuries and damages" (*id*.). The specific negligent acts alleged by Plaintiff include (1) Defendant's failure to maintain a good, sound, and seaworthy vessel; (2) Defendant's failure to keep a proper lookout, to keep control of his vessel, and to avoid the collision; (3) negligence *per se* violations of Tenn. Code Ann. §§ 69-9-215 & 216; and (4) negligence *per se* violations of the federal "Inland Navigational Rules" (33 U.S.C. §§ 2002, 2005, 2006, 2008, & 2018) (Court File No. 1, ¶¶ IV–V).

[4] Timpani owns and operates Timpani Marine Survey in Gallatin, Tennessee, and frequently provides damage surveys, causation analysis, and appraisal of repair expense and value of watercraft to insurance companies. Timpani holds an associates degree in heavy equipment and diesel engines, is a member in good standing of the American Boat & Yacht Counsel Society of Accredited Marine Surveyors and the International Association of Marine Investigators, and has marine mechanic experience in the United States Coast Guard and the private sector. The full account of Timpani's credentials is included in Court File Nos. 18, 18-2, & 21-2.

(*Id*. at 7; *see also* No. 18-2). Defendant argues the defect caused his boat to hit Mercer's boat the first time; Defendant's boat bounced off, Defendant tried and failed to move the transmission back to neutral, and his boat hit Mercer's boat a second time before, presumably, he managed to get the transmission into a forward gear (*id*. at 3-4). Defendant also claims the defective condition was not apparent to a lay observer, such as himself, until it manifest itself (*id*. at 8).

Plaintiff alleges the force of the two collisions caused her to be "violently jerked and thrown about" and she has suffered physical injury including a ruptured cervical disc, mental and emotional distress, loss of wages and employment and permanent loss of earning capacity, loss of enjoyment of life and permanent impairment of bodily function (Court File No. 1, ¶ VII). Plaintiff prays for (1) $1,000,000 in compensatory damages and (2) punitive damages as appropriate (Court File No. 1, p. 4-5).

### III. MOTION TO EXCLUDE PORTIONS OF TIMPANI'S TESTIMONY

Plaintiff moved to exclude portions of Timpani's testimony as to the defective condition of Defendant's boat (Court File No. 21). Specifically, Plaintiff argues Timpani's report (disclosed to Plaintiff on January 30, 2007 pursuant to Fed. R. Civ. P. 26; hereinafter "Rule 26 Report") concluded that wear-and-tear on the shift cables and neutral safety switch constituted a mechanical defect which caused Defendant's boat to start in reverse (Court File No. 22, p. 2). In an affidavit in response to Plaintiff's motion for partial summary judgment (the "Affidavit"), Timpani concludes, again, wear-and-tear caused the mechanical defect which caused the accident, but further states this defective condition was "contained within mechanical coverings" and Defendant would not have known of or had reason to expect this defect would manifest (*id*. at 3). Plaintiff argues this last

4

portion of the Affidavit, which cuts to Defendant's knowledge (i.e., the defective condition was concealed from a lay person) exceeds the scope of the Rule 26 Report.

The Court disagrees. First, it is not beyond the scope of the Rule 26 Report for Timpani to state the defective condition was "contained within mechanical coverings," inferring a lay person would not be aware of this defect. Timpani was, after all, retained as an expert to evaluate the transmission and engine of Defendant's boat; it seems obvious this defect was complicated enough to exceed the comprehension of a weekend boater like Defendant. It also seems obvious, when the alleged defect is in an engine or transmission, the defect might be covered by other component parts. Plaintiff was on notice Defendant has no great knowledge of boats or boat engines and did not keep extensive records on or do extensive work to the mechanical condition of his boat (*see*, *e.g.*, Court File No. 16-2, p. 3-5, p. 17-22, excerpts from Defendant's testimony submitted by Plaintiff).

Second, Plaintiff is the moving party on a motion for partial summary judgment; therefore, all reasonable inferences are to be drawn in favor of Defendant, who is the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Defendant's deposition explicitly states he had no knowledge or experience with this defective condition having occurred in the past (Court File No. 16-2, p. 11). Viewed in the light most favorable to Defendant, it is no great stretch to infer Defendant was without knowledge of the mechanical defect. Timpani's validation is not prejudicial to Plaintiff's case and thus harmless under Fed. R. Civ. P. 37(c).

Third, in the portion of the Rule 26 Report attached to Plaintiff's motion, Timpani observes the "hydraulic transmission is located inside the boat between the engine and transom assembly" and the "transmission is operated with push pull cables from shifters located at the upper and lower helm" (Court File No. 21-2, p. 5). This observation suggests the transmission was partially covered,

and there was some measure of space between the shifting cables. In other words, Timpani's report suggests it would be difficult for one person, who was simultaneously driving the boat, to see all the mechanical workings at one time. Plaintiff complains Timpani's "new" opinion puts her at a disadvantage because she did not take Timpani's deposition. However, the Court finds, based on the Rule 26 Report, Plaintiff was on actual and/or constructive notice the defective condition was not immediately apparent to Defendant. Failing to depose Timpani was Plaintiff's litigation choice, and the Court will not penalize Defendant for it.

Finally, Plaintiff argues Defendant failed to "reveal" in his pleadings his defense strategy, i.e. his boat reversed into Mercer's boat because of a defective condition. Plaintiff cites no case to suggest a "mechanical defect theory" must be raised as an affirmative defense. In his answer (Court File No. 5), Defendant denied the negligence allegations in the complaint. This is sufficient under the notice pleading standard. Fed. R. Civ. P. 8. Further, Plaintiff's complaint invokes admiralty law and her summary judgment motion invokes the *Oregon* presumption of liability (discussed in Part IV(C) below). In citing the presumption, Plaintiff should be aware of its defenses – one of which is "inevitable accident."[5] Thus, there is no lack of notice and no procedural harm to Plaintiff from Defendant setting forth his theory of the case.[6]

Plaintiff's motion to exclude portions of Timpani's testimony will be **DENIED** (Court File No. 21).

---

[5] *See*, *e.g.*, *Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co.*, 33 F.2d 272, 274 (2d Cir. 1929) (L. Hand, Cir. Judge) ("A failure of machinery or gear is within this class of cases and the owner's duty is often spoken of as the defense of 'inevitable accident.'").

[6] In a segment of Defendant's deposition submitted by Plaintiff, Defendant apparently pointed to an article about a potential manufacturing defect (*see* Court File No. 16-2, p. 20), which Plaintiff's counsel queried. The Court believes Plaintiff to have been on *both* constructive and actual notice that Defendant's theory of the case could include a manufacturing defect.

## IV. DISCUSSION

### A. Summary Judgment Standard

Fed. R. Civ. P. 56(c) provides, if the moving party can establish "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," summary judgment should enter in favor of the moving party. Initially, the burden rests on the moving party to conclusively show the absence of a genuine issue of material fact. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The test for summary judgment is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In considering a summary judgment motion, the Court views the facts, including all reasonable inferences, in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587-88. "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Rather, a genuine issue of material fact must exist to preclude the entry of summary judgment. *Monette v. Elec. Data Sys. Corp.*, 90 F. 3d 1173, 1177 (6th Cir. 1996).

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 (advisory comm. notes) (1963). The non-moving party is not entitled to a trial on the basis of its allegations alone. The non-moving party must come forward with significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A scintilla of evidence is not enough; the non-moving party must present enough evidence for a jury to reasonably find for its side. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). The Court must decide "whether the evidence presents a sufficient disagree-

ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. At bottom, the moving party is entitled to summary judgment if the non-moving party cannot make a satisfactory showing on an essential element of its case with respect to which it bears the burden of proof. *Celotex*, 477 U.S. at 323.

**B.    Jurisdiction And Choice Of Law**

The Court has jurisdiction over this matter pursuant to both 28 U.S.C. § 1332 (diversity) and § 1333(1) (admiralty).[7] Admiralty jurisdiction arises where the tort occurred on navigable water of the United States, and where there is a substantial connection to maritime activity. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The parties stipulate as to the "location" prong (*e.g.*, Court File Nos. 1 & 5). This Court has previously found the Tennessee River to be a navigable waterway of the United States. *Vanderpool v. Edmondson*, 2002 WL 32059024 *2 (E.D. Tenn. July 31, 2002).

As to the "connection" prong, the United States Supreme Court has considered whether a collision between two pleasure boats (on a navigable river) bears a substantial connection to maritime activity and has held, any collision between two boats/vessels on navigable waters invokes admiralty jurisdiction. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 677 (1982). Finally, though Plaintiff was a passenger aboard Mercer's boat and was not its owner, she may assert a negligence claim against Defendant for her personal injuries. *See Kermarec v. Compagnie Generale Transatalantique*, 358 U.S. 625, 628 (1959) (applying admiralty law to a negligence action for personal injuries brought by a guest); *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 73 (6th

---

[7] 28 U.S.C. § 1333(1) provides a United States District Court with original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Cir. 1990) (finding federal maritime law applied instead of state tort law in action brought by cruise ship passenger).

### C. The *Pennsylvania* And *Oregon* Rules

Plaintiff alleges she was injured because of Defendant's negligent operation of his boat. This negligence caused two collisions with Mercer's boat, on which Plaintiff was a passenger. Those collisions caused Plaintiff to hit various parts of Mercer's boat, which in-fact and proximately caused her alleged injuries.

To establish a negligence claim under admiralty law, Plaintiff must show (1) there was a duty owed to Plaintiff by Defendant; (2) Defendant breached that duty; and (3) Defendant's breach caused Plaintiff's alleged injuries. *See In Re Mid-S. Towing Co.*, 418 F. 3d 526, 531 (5th Cir. 2005). As Plaintiff cites in her complaint, admiralty law (specifically here, the Inland Navigational Rules) imposes a duty of care on vessel owners and operators, to operate such vessels under the "rule of good seamanship" and in a safe and seaworthy manner. *See* Thomas J. Schoenbaum, Admiralty and Maritime Law 760-64; 33 U.S.C. § 2002(c); *see also Belden v. Chase*, 150 U.S. 674, 698 (1893) (noting obligatory nature of the Inland Navigational Rules). This duty is so deeply ingrained that admiralty law includes several rebuttable presumptions not ordinarily found in state tort law.

The first, the "*Pennsylvania* Rule," is a presumption of causation.[8] It holds, if a boat violates

---

[8] *See In Re Mid-S. Towing Co.*, 418 F.3d 526, 531 n.5 (5th Cir. 2005) ("It is important to distinguish . . . between the presumption of fault announced in *The Oregon* and the presumption of causation announced in *The Pennsylvania* . . . *Compare* Schoenbaum, *Admiralty and Maritime Law*, § 14-3 at 104-05 (classifying the *Oregon* rule as a 'presumption of fault' akin to the common law doctrine of *res ipsa loquitor* 'primarily applicable in allision cases,' which 'creates a rebuttable presumption of negligence on the part of a party who is in exclusive control of an instrumentality with regard to a mishap that ordinarily does not occur in the absence of negligence') *with id*. at § 14-3 at 101 (classifying the rule of *The Pennsylvania* as not establishing a rule of fault but as being 'limited to causation')").

a statutory rule designed to prevent collisions, such boat bears the burden of showing "not merely that her fault might not have been one of the causes, or that is probably was not, but that it could not have been." 86 U.S. 125, 136 (1874). The second, the "*Oregon* Rule," is a presumption of liability. It holds, if a moving vessel collides with a stationary object,[9] the moving vessel is presumed to be at fault. 158 U.S. 186, 192 (1895);[10] *Am. Petrofina Pipeline Co. v. M/V Shoko Maur*, 837 F.2d 1324, 1326 (5th Cir. 1988); *City of Chicago v. M/V Morgan*, 375 F.3d 563, 572 (7th Cir. 2004); *Self Towing, Inc. v. Brown Marine Servs., Inc.*, 837 F.2d 1501, 1503 (11th Cir. 1988). The burdens of production and persuasion shift to the moving vessel, and the defendant is presumed liable unless he or she produces a preponderance of evidence showing the moving vessel acted with reasonable care, the allision was the stationary object's fault or resulted from an "inevitable accident." *Am. Petrofina Pipeline Co.*, 837 F.2d at 1326 (citing *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977); *Delta Transload, Inc. v. M/V Navios Commander*, 818 F.2d 445, 449 (5th Cir. 1987)); *see also Algoma Cent. Corp. v. Mich. Limestone Ops.*, 74 F.3d 1240 (table), 1996 WL 23214, *6 (6th Cir. Jan. 22, Cir. 1996) (citing *Bunge*, 558 F.2d at 794-95; *Delta Transload*, 818 F.2d at 449); *Australia Transit Co. v. Lehigh Valley Transp. Co.*, 235 F. 53, 54-55 (6th Cir. 1916) (recognizing defense of inevitable accident due to mechanical defect but finding against such defense because there was no direct evidence of cargo-hold problems and the ship was on notice of

---

[9] An accident between a stationary object and a moving vessel is typically called an "allision" instead of a "collision" in admiralty cases.

[10] *The Oregon*, 158 U.S. 186, 197 (U.S. 1895) ("where one vessel clearly shown to have been guilty of a fault, adequate in itself to account for the collision, seeks to impugn the management of the other vessel, there is a presumption in favor of the latter, which can only be rebutted by clear proof of a contributing fault. This principle is peculiarly applicable to the case of a vessel at anchor, since there is not only a presumption in her favor by the fact of her being at anchor but a presumption of fault on the part of the other vessel, which shifts the burden of proof upon the latter.").

a "steam bind"); *The Olympia*, 61 F. 120, 123 (6th Cir. 1894). Ultimately, the *Oregon* presumption derives from "the common-sense observation that moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way." *Folkstone Maritime Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir. 1995) (quoting *Wardell v. Nat'l Transp. Safety Bd.*, 884 F.2d 510, 512 (9th Cir. 1989)). At the same time, "presumptions 'are designed to fill a factual vacuum,' and if the facts of a case are apparent, the need for a presumption is eviscerated." *M/V Morgan*, 375 F.3d at 572 (quoting *Rodi Yachts, Inc. v. Nat'l Marine, Inc.*, 984 F.2d 880, 887 (7th Cir. 1993)).

Using the *Oregon* presumption does not permit a plaintiff to avoid proving the general elements of negligence; "rather, it merely satisfies the plaintiff's *prima facie* case." *Id.* (citing *Bunge*, 558 F.2d at 798; *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967)). If a defendant comes forward with evidence to rebut the presumption, a court must consider such evidence. "Rebutting the presumption does not necessarily exonerate the [defendant's] vessel from all liability." *Id.* at 573. Admiralty law recognizes comparative fault, just as it recognizes "as between a [moving] vessel and stationary object struck by it[,] common sense suggests that the former is more likely to have been at fault than the latter." *Id.* (*citing Rodi Yachts*, 984 F.2d at 886-87).

       1.    *The Oregon* Rule Applies but Defendant has Submitted Sufficient Evidence of an "Inevitable Accident" to Withstand Summary Judgment.

In his response to Plaintiff's summary judgment motion, Defendant concedes the *Oregon* presumption of liability applies,[11] but is rebuttable (Court File No. 18, p. 8-9). Defendant claims he "experienced the sudden and unexpected mechanical failure of his houseboat's transmission falling

---

[11] *But see City of Chicago v. M/V Morgan*, 375 F.3d 563, 572 (7th Cir. 2004) (quoting *Rodi Yachts, Inc. v. Nat'l Marine, Inc.*, 984 F.2d 880, 887 (7th Cir. 1993)) (noting presumptions "are designed to fill a factual vacuum" and if the facts are apparent, a presumption is not needed).

out of neutral into reverse without any active movement on his part to manipulate the transmission into the reverse setting," an event which had never occurred before and thus an event about which Defendant had no prior knowledge (and also had no time to avoid to react) (*id*. at 10). Defendant supports his position with the affidavit and report of Timpani, which Plaintiff does not factually challenge (*see generally* Court File No. 23). Plaintiff points out, appropriately, Defendant's burden to show an "inevitable accident" is relatively heavy (*id*. at 2-5).

Viewed in the light most favorable to Defendant, *Matsushita*, 475 U.S. at 587-88, it appears Defendant submitted an uncontroverted expert opinion which concludes a mechanical defect caused the accident. Defendant has provided testimony from an expert and himself that he was unaware of the defect and it was not discoverable by him. Defendant offered evidence on causation, which distinguishes this case from cases cited by Plaintiff in her reply brief (Court File No. 23, p. 2-5). Outside of the *Oregon* presumption – strong as it may be – Plaintiff has not supplied evidence which substantively challenges or counters the opinion of Defendant's expert. Thus, it appears Defendant has raised a genuine issue of material fact; as the party moving for summary judgment, Plaintiff has failed to establish "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Here, there is enough disagreement to require submission of this dispute to a jury to weigh the evidence and determine the sufficiency of the defense.

    2.  Plaintiff has not Offered Sufficient Evidence for the Court to Find Defendant Negligent *Per Se* on a Summary Judgment Motion.

In her reply (Court File No. 23), Plaintiff suggests Defendant failed to maintain a seaworthy vessel because (1) he purchased a 25-year-old boat in a used condition, (2) did not obtain a marine survey at the time of purchase, (3) did and does not pursue a maintenance schedule, and also (4) did not check the cables, rudders, or steering cables prior to the accident (*id*. at 5-6). Plaintiff argues, "rather than demonstrating an inevitable accident, that proof demonstrated an overwhelming breech [*sic*] of the Defendant's duty to maintain, inspect, and equip his vessel to keep it seaworthy" (*id*. at 6). Plaintiff could be correct in asserting Defendant breached a duty; however, *Plaintiff has failed in her summary judgment motion to establish the duty owed to Plaintiff by Defendant*.

Plaintiff cites several cases (most of which are non-precedential and the most recent having been published in 1939) which purportedly establish, as a matter of law, Defendant's duty of care. But these cases deal with commercial operators and shipping companies that were traveling on commercial channels. Plaintiff – without evidence – cannot hold Defendant to the standard of care of a commercial vessel, because Defendant was not operating a commercial vessel. It is not obvious to this Court that a pleasure boat, owned by a weekend boater,[12] requires the "maintenance schedule" alluded to by Plaintiff. Perhaps a boat is like a car and requires regular maintenance, i.e. a "60,000 mile tune-up," but this is not common knowledge – at least to the Court, and Plaintiff has submitted neither evidence nor argument on this point. Accordingly, Plaintiff has not carried her burden of proving Defendant violated a standard of "seaworthiness" which would preclude Defendant's use of a "mechanical defect" defense or establish causation under *The Pennsylvania* Rule.

---

[12] *See* Court File No. 18, p. 1-2 ("In the context of boating, Defendant Grant A. Cobb had no formal training, courses or seminars . . . All of his boating experience has simply involved going out and driving the boat around.").

## V. CONCLUSION

For the foregoing reasons, this Court finds summary judgment on the issue of Defendant's liability is inappropriate in this matter, and accordingly will **DENY** Plaintiff's motion (Court File No. 16). The Court will also **DENY** Plaintiff's motion to exclude portions of the testimony of Defendant's expert (Court File No. 21).

An order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**